(148 App. Div. 199.)

WILLIAMS ENGINEERING & CONTRACTING CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

REFERENCE (§ 24*)—CONSENT TO—RELIEF BY COURT.

The city of New York contracted with plaintiff's assignor for bridge work, and later, desiring to make changes eliminating part of such work, to which plaintiff's assignor objected, the parties made a written agreement, covering many disputed questions, and agreeing that the damages for the change in the contract should be determined in a suit which the city would co-operate in bringing to an early trial, and which it consented should be sent to a referee to be agreed on. The referee was subsequently agreed on, and plaintiff had substantially completed his case, when the city moved to be relieved from its stipulation to refer, and that the case be sent to a jury. *Held*, that the motion, showing no issues between the parties not raised by the pleadings on which the referee was trying the case, should be denied as too late, and because the stipulation

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was a part of the consideration of the contract under which the plaintiff had acted, so that he could not be restored to his position.

[Ed. Note.—For other cases, see Reference, Cent. Dig. § 40; Dec. Dig. § 24.*]

Appeal from Special Term, New York County.

Action by the Williams Engineering & Contracting Company against the City of New York. From an order relieving defendant of a stipulation and setting aside an order of reference, plaintiff appeals. Reversed.

See, also, 129 N. Y. Supp. 1151.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Kellogg & Rose (L. Laflin Kellogg, of counsel), for appellant.

Archibald R. Watson, Corp. Counsel (Terence Farley, of counsel, and R. Percy Chittenden, on the brief), for respondent.

CLARKE, J. In December, 1903, the Williams Engineering & Contracting Company, a partnership composed of three men, John Williams, James H. Holmes, and James F. Kennedy, bid for and obtained a contract for certain work on the Blackwell's Island Bridge. They had filed a certificate of intending to do business under the name chosen, and in the acknowledgment of the contract appears:

"Before me personally came John Williams, to me known and known to me to be the president and one of the partners of the Williams Engineering & Contracting Company, who being by me duly sworn did say for himself as follows, said John Williams: That he is one of the partners of said company, and a member of said firm, and that he signed the foregoing contract for and on behalf of said firm, and acknowledged that he executed the same for the purposes therein mentioned for said firm."

In June, 1904, the firm formed itself into a corporation under the same name, and it is claimed, assigned the contract to the corporation. It is further claimed that said assignment was approved by the commissioner of bridges. It proceeded with the work, but thereafter the bridge commissioner determined to change the plans, by eliminating a very considerable portion of the work contemplated by the original contract, mainly consisting of elevators and power stations on the Blackwell's Island piers. A controversy arose as to the amount of damages for the taking away of this portion of the work, and also a claim for damages for delay caused by the city. On August 6, 1909, a supplemental agreement was entered into which, after reciting the contract, contained the following:

"Whereas, the party of the first part is desirous of withdrawing from the performance of the said contract a large portion of the work called for thereunder, to wit, the erection of four elevator towers, two power houses, and certain other work which need not be specifically mentioned, and the party of the second part is unwilling to allow the said work to be withdrawn, and has protested against the withdrawal of the same, and claims damages thereof, as well as other damages in connection with the said contract; and whereas, there remains unpaid under the estimates on this work, including retained percentages, the sum of $21,909.25, and additionally unpaid the amount of $6,500, covered by commissioner's order of January 8, 1907, making a total

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

amount of $28,409.25; and whereas, the parties hereto are desirous of avoiding delay in the prosecution of the work, or unnecessary expense of litigation: Now, therefore, this agreement witnesseth: That the party of the second part, without waiving its rights to the damages for work taken away as hereinbefore referred to, hereby agrees to perform the following amount of work at the following agreed prices, to wit: 1,842 cubic yards of cut granite, at $55.50.    2,072 cubic yards concrete at $15.36 per cubic yard.    New York anchor pier complete, $2,500.    Queens anchor pier complete, $3,200.    All under the conditions and changes in reference of the work as they now exist. * * * The party of the second part is to be paid therefor in the manner and form and upon the certificates as set out in the original contract.    That the party of the first part hereby agrees to pay to the party of the second part, immediately upon the execution of this agreement, * * * the sum of $28,409.25, being composed of the sum of $21,909.25, the retained percentage, and $6,500 commissioner's order above referred to.    * * *    It is further stipulated and agreed as a consideration of this agreement that the city of New York, its officers and agents, will co-operate with the party of the second part to procure an immediate and early trial and determination of the alleged claim for damages under said contract above referred to, which claim is not conceded by the party of the first part.    By and with the consent of the counsel for the corporation of the city of New York, whose approval it is understood has already been obtained, the party of the first part will consent to a reference for the trial of the same, the referee to be agreed upon between the parties hereto.    It is further agreed that this supplemental agreement shall not be considered a waiver of the rights of either party, of the one against the other, for any subject or matter not stipulated herein, nor to modify or change the rights of either party under the original contract."

This was signed on behalf of the city by the commissioner of bridges, was approved as to reasonableness of prices by the chief engineer and the deputy and acting comptroller, and as to form and substance by the acting corporation counsel.

A summons and complaint, verified on the 13th of October, 1909, was served, the first paragraph of which set forth that the plaintiff is a domestic corporation, and the third that heretofore, and on or about the 31st day of December, 1903, the plaintiff and the defendant duly made and entered into a certain contract in writing.    The original answer is not in the record.    On December 28th the attorneys for the plaintiff and the corporation counsel signed a stipulation to refer to MacGrane Coxe, Esq., all the issues in the action, to hear, try, and determine the same, and on January 5, 1910, an order was entered pursuant to said stipulation.

The amended answer to the complaint, verified March 14, 1910, denied any knowledge or information as to the allegations of the first and third paragraphs of his complaint, mentioned above, and for a fourth and separate defense set up the making of the contract by the commissioner of bridges with the Williams Engineering & Contracting Company; that said Williams Engineering & Contracting Company was an unincorporated association or partnership between John Williams, James H. Holmes, and James F. Kennedy, doing business under an assumed name in accordance with the certificate filed in the office of the county clerk December 18, 1903.    It set up clause UU of the contract, that the contractor would not assign, transfer, dispose of, or otherwise convey said contract without the previous consent of the commissioner; that the plaintiff was a corporation organized the 1st day of June, 1904; that there has never been any

assignment of the contract to the corporation; that the plaintiff herein has no right, title, or interest in and to said contract, and is not the proper party in interest. It also set up that the supplemental contract of August 9, 1909, was absolutely null and void, and for a counterclaim that it had paid to the plaintiff $194,734.77, no part of which was due or owing, and asked for judgment for said sum.

The plaintiff served an amended complaint, verified April 1, 1910, in which it set up in the third paragraph the composition of the firm and that it made the contract with the city; that in June it organized and incorporated under the same name, and that by and with the consent of the commissioner of bridges the firm assigned to the corporation; that said assignment by said firm to this plaintiff was lost or mislaid, and that on the 30th of December, 1909, the loss of said assignment having been discovered, a written confirmation of said lost assignment was duly executed and approved by the commissioner of bridges. The answer to the amended complaint, verified April 21, 1910, admitted in paragraph 1 the making of the contract with the firm, and set up the same defenses as to no assignment, counterclaims, etc., that were contained in the amended answer to the original complaint. So that by April the mutual pleadings presented the precise questions which are now made the basis of the motion at bar. Nevertheless the hearings before the referee began on the 1st day of June, 1910, and continued to the 17th of March, 1911. About 800 pages of testimony were taken, and the case of the plaintiff practically completed.

An action was begun by Emma G. Williams against the city of New York, the plaintiff corporation, the partners of the original firm, James J. Frawley, Mary E. Frawley, Edward F. Sheehy, Robert J. Rooney, L. Laflin Kellogg, Abram J. Rose, and John Williams, the summons being dated February 21, 1911, and the complaint verified on that day, in which Mrs. Williams claimed, upon information and belief, that as a matter of fact, whilst the said Williams Engineering & Contracting Company bid upon said contract as a firm, that said copartnership was substantially and wholly owned by John Williams, the two remaining parties having joined said copartnership for the purpose of aiding and assisting said John Williams in securing said contract, and with the distinct understanding and agreement between them that some nominal interest would thereafter be segregated to the said parties, but the said contract should be held by said firm as a copartnership, and prosecuted and conducted and carried out for the benefit and interest of said John Williams and the plaintiff, pursuant to a certain agreement theretofore made between the said John Williams and the plaintiff, a copy of which was annexed; that said equitable assignment referred to was made, executed, and delivered to the plaintiff after the aforesaid contract was awarded to said copartnership, in consideration of the plaintiff having advanced large sums of money to the said John Williams, in expectation of receiving said contract, and that said assignment contemplated, and as a matter of fact it was distinctly agreed, that the plaintiff should have a three-fourths (75 per cent.) interest in and to the said John Williams' interest in said firm—that is to say, a three-fourths interest in and to

the assets of said firm and the profits arising out of said contract; that said assignment was made to the plaintiff with a full knowledge and understanding on the part of defendants of said agreement; that it was agreed that the remaining 25 per cent. of said contract should be and remain as partnership assets; that said contract was assigned to the corporation upon the distinct understanding and agreement that the net profits of said corporation in and to said contract should be 25 per cent. of the profits and fruits arising therefrom, and the remaining 75 per cent. of profits and fruits should be the property of and belong to the plaintiff; that the said corporation took said contract with full knowledge of plaintiff's rights; that the contract was transferred to said corporation with the consent, acquiescence, and approval of the commissioner of bridges; and she demanded judgment against the city for $310,250, and against the codefendants, determining the said codefendants have no right or interest in and to said sums of money, or any part thereof.

Thereafter an order to show cause was granted on March 22, 1911, upon the motion of the corporation counsel, for an order joining Emma G. Williams as a party defendant in this action, relieving the city from its stipulation consenting to a reference, and directing that the case be tried before a jury or staying the hearings before the referee pending the trial of the issues in the case of Emma G. Williams against the city. Mrs. Williams and her counsel protested against being made a party defendant in this action, and the court has denied that part of the motion; but it granted the motion to relieve the city from the stipulation, and directed that the case be put upon the day calendar of the Trial Term for trial, upon the payment of costs and disbursements by the city, amounting to $1,788.75. From the latter portion of the order the plaintiff appeals.

This case is now on trial before an able and experienced referee. Every matter now presented as a ground for this motion is set up in the pleadings, and was so set up and at issue two months prior to the first hearing before the referee. It is too late, under such circumstances, to set aside the stipulation. No possible harm can come to the defendant by trying the issues before a referee rather than before a jury. I think it very doubtful, in view of the supplemental agreement of August 6, 1909, which has been fully carried out by both parties, whether the court has the power on motion to set aside the stipulation. Certainly it would be an abuse of discretion so to do. The parties had gotten together for the purpose of settling their controversies by mutual agreements and concessions. It would be impossible to restore the status quo. To set aside the stipulation would be to destroy one of the principal considerations of the agreement. There is no substantial ground for such motion.

The order appealed from, so far as it sets aside the stipulation and order of reference and directs the case to be tried before the court, should be reversed, with $10 costs and disbursements to appellant. All concur.